IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YANIRA BAEZ-MEDINA,           :     CIVIL ACTION
individually and on behalf    :     NO. 21-3534
of others similarly situated, :
                              :
          Plaintiffs          :
     v.                       :
                              :
THE JUDGE GROUP, INC.,        :
                              :
          Defendant           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        JULY 20, 2023

## I.   INTRODUCTION

Plaintiff Yanira Baez-Medina, individually and on behalf of others similarly situated, brings this action against her former employer, Judge Group ("Defendant"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 et seq., and Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. and Cons. Stat § 333.104(c) (West 2012) and 34 Pa. Code § 231.43(b). In her Second Amended Complaint, Baez alleges that Defendant failed to pay her and other similarly situated recruiters overtime in accordance with the FLSA and PMWA by misclassifying them as exempt employees and paying them a salary with no overtime compensation.

After attending mediation, the parties reached a settlement agreement. Baez filed an uncontested motion for approval of the

settlement, which the Court granted in part and denied in part after a hearing on the record. The parties filed a revised settlement agreement which the Court granted in part and denied in part due to issues with Named Plaintiff Baez's service award. Before the Court is the parties' final revised settlement agreement. As explained herein, the Court will approve the final settlement agreement.

## II.  BACKGROUND

Plaintiff Todd Katona originally filed this collective action against Defendant in the United States District Court for the Western District of Pennsylvania. See Pls.' Unopposed Mot. 2; ECF No. 96 [hereinafter "Pls.' Mot."]. Katona alleged that Defendant failed to pay him and other similarly situated recruiters overtime in accordance with the FLSA and PMWA when Defendant classified them as exempt employees with salary but no overtime compensation. Id. This action was then transferred to this Court pursuant to the Parties' agreement. Id.

Katona filed an amended complaint, and Defendant moved to dismiss. Id. The Court dismissed the amended complaint but provided Katona the opportunity to amend. Id. Katona filed a second amended complaint, adding Baez as a named plaintiff. Id. Defendant moved to dismiss the second amended complaint, and the Court dismissed Katona's individual claims based on insufficient

allegations relating to willfulness. Id. This left Baez as the sole named plaintiff.

Defendant answered the second amended complaint, denying all material allegations and arguing that it properly classified Baez and other recruiters as exempt employees. Id. Defendant also asserted that it paid recruiters properly under both the FLSA and PMWA and if there was a mistake made, it was made in good faith and was not a willful violation. Id. at 2-3.

Baez (and Katona, who had not yet been dismissed) moved for conditional certification, which Defendant opposed. Id. at 3. The Court conditionally certified this matter as a collective action, and authorized Baez to send notice to "[a]ll current and former Salaried Recruiters employed by Judge Group at any time during the past two years." See March 25, 2022 Order, ECF No. 62. After Baez sent notice, fifty-five individuals joined the lawsuit as plaintiffs. See Pls.' Mot. 3, ECF No. 96. Forty-three of those fifty-five were employed by Defendant in the two years preceding June 2023. Id.

The parties participated in a mediation with experienced wage-and-hour mediator Martin F. Scheinman. Id. Prior to the mediation, the parties exchanged extensive information relating to Baez and the opt-in Plaintiffs' damages. Id. The parties reached a tentative settlement on behalf of Baez and the opt-in plaintiffs following the conclusion of mediation. Id. The

tentative settlement has been memorialized as the settlement agreement. Id. at 3-4. Before the Court is the parties' final revised settlement agreement for approval.

### III.   TERMS OF THE SETTLEMENT

The parties agreed to settle Baez and the Opt-in Plaintiffs' claims for a gross amount of $175,000 (the "Gross Settlement Amount"). See Settlement Agreement ¶¶ 1.13, 2(i), ECF No. 96-1. The Gross Settlement Amount includes: (1) a service award[1] for Named Plaintiff Baez of $5,000; (2) Plaintiffs' counsel's attorneys' fees up to forty (40) percent of the Gross Settlement Amount, or $70,000; (3) Plaintiffs' counsel's out-of-pocket litigation costs and expenses up to $11,979.94; and Plaintiffs' individual settlement shares, which will be calculated on a pro rata basis by the settlement administrator pursuant to the calculation described in Paragraph 3 of the Agreement. Id. at ¶¶ 2-3. After subtracting these costs from the Gross Settlement Amount, the resulting Net Settlement amount is $88,020.06 (less administration costs)[2]. Id. at ¶ 2.

The amount of individual settlement payments to Plaintiffs will be determined from the Net Settlement Amount in advance of

---

[1] Referred to as "General Release Award" in original settlement agreement.

[2] The parties have obtained a quote from ILYM Group indicating that settlement administration costs are likely to be at or near $4,000.

the issuance of notice of the settlement to Plaintiffs. Id. at ¶ 3. These individual amounts will be a pro rata share of the Net Settlement Amount calculated by attributing the same number of overtime hours for all employees (because there are no time records) and determining the amount of unpaid overtime unique to each Plaintiff based on their specific rates of pay would not be possible. Id. This methodology was determined by Plaintiffs' counsel and approved by Defendant's counsel. Id. Any unclaimed portion of the Net Settlement Amount shall remain Defendant's property. Id.

In exchange, the Opt-in Plaintiffs originally agreed to release the Released Parties[3] as follows:

> Upon passage of the Approval Date, each Plaintiff (on behalf of himself/herself and his/her heirs, spouses, executors, assigns, and representatives) releases and forever discharges any and all wage and hour clams that they may have against the Released Parties, relating back to the full extent of the federal and state statute of limitations and continuing to the Approval Date, including, without limitation, all claims under the FLSA and PMWA as asserted in this Action, all state and federal claims for unpaid wages (including overtime), timely payment of wages, wage statement or wage notice claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. This release is contingent upon Defendant's fulfillment of its

---

[3] Defined in the Agreement as "The Judge Group, Inc., and each and every one of its parents, subsidiaries, divisions, successors, affiliates, and assigns, and their respective directors, officers, owners, members, employers, agents, insurers, representatives, successors, and/or administrators." Id. at ¶ 1.12.

payment obligations under Sections 6, 7, 8, and 9, below.

Id. at ¶ 5. The original agreement provided that Named Plaintiff will receive a "general release award" in the total amount of $5,000 for her leadership and active participation in this lawsuit and in exchange for release of her claims against Defendant in this litigation, as well as any claims arising out of or relating to her employment with Defendant.[4] Id. at ¶ 8.

In the revised settlement agreement all Plaintiffs, including Named Plaintiff, agreed to release Defendants as follows:

> Upon passage of the Approval Date, each Plaintiff (on behalf of himself/herself and his/her heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims (including, but not limited to, claims for the reimbursement of liquidated damages, interest, penalties, attorney's fees, and litigation costs and expenses) arising prior to the Approval Date and either asserted in or reasonably related to the Action, including but not limited to all such claims for unpaid regular or overtime wages under the FLSA and PMWA, or any other federal, state, or local statute, regulation, rule, or common law theory. This release is contingent upon Defendant's fulfillment of its payment obligations under Sections 6, 7, 8, and 9, below.

Revised Settlement Agreement ¶ 5, ECF No. 104-1. This release is also present in the final revised settlement agreement. See Final Revised Settlement Agreement ¶ 5, ECF No. 106-1. However,

---

[4] The award was to be paid in addition to any individual settlement share owed to Baez.

in the revised settlement agreement, Named Plaintiff also agreed
to not appeal the Court's Order approving the settlement and
agree not to apply for employment with Defendant in exchange for
her service award. See Revised Settlement Agreement ¶ 8, ECF No.
104-1. Named Plaintiff's waiver of her right to appeal the
Court's Order and from applying from applying for employment
with defendant has been removed in the final revised settlement
agreement. See Final Revised Settlement Agreement ¶ 8, ECF No.
106-1.

## IV.   LEGAL STANDARD

FLSA claims may be compromised or settled in two ways: (1)
a compromise supervised by the department of Labor pursuant to
29 U.S.C. § 216(c), or (2) a compromise approved by the district
court pursuant to 29 U.S.C. § 216(b). Howard v. Phila. Hous.
Auth., 197 F. Supp. 3d 773, 776 (E.D. Pa. 2016) (Robreno, J.)
(citing Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp. 3d 474,
476 (E.D. Pa. 2014)).

Here, the parties proceed under the second avenue--approval
by the district court. The Third Circuit has not given guidance
on this issue, so district courts in this Circuit have looked to
the standard set forth by the Eleventh Circuit in Lynn's Food
Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982),
when a party seeks judicial approval of an FLSA settlement
agreement pursuant to 29 U.S.C. § 216(b). See Katz v. DNC Servs.

7

Corp., No. 16-cv-5800, 2023 U.S. Dist. LEXIS 65901, at *29 (E.D. Pa. April 14, 2023) (collecting cases); but see Alcantara v. Duran Landscaping, Inc., No. 21-cv-3947, 2022 U.S. Dist. LEXIS 122552, at *10 (E.D. Pa. July 12, 2022) (questioning district courts' reliance on Lynn's Food because "[i]t's not clear that Lynn's Food stands for the broad proposition that this Court and others have given it").

Under Lynn's Food, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about an employer's overreaching.'" Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting Lynn's Food, 679 F.2d at 1354-55)).

Courts will conduct a two-part fairness test inquiry if the settlement concerns a bona fide dispute to determine if: (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace. Mabry v. Hildebrandt, No. 14-5525, 2015 U.S. Dist. LEXIS 112137, at *3-4 (E.D. Pa. Aug. 24, 2015); see also McGee v. Ann's Choice, Inc., No. 12-2664, 2014 U.S. Dist. LEXIS 75840, at *5 (E.D. Pa. June 4, 2014).

## V.   DISCUSSION

### A. <u>Bona Fide Dispute</u>

A dispute is bona fide when it involves "'factual issues' rather than 'legal issues such as the statute's coverage and applicability.'" <u>Creed v. Benco Dental Supply Co.</u>, No. 3:12-CV-01571, 2013 U.S. Dist. LEXIS 132911, at *3 (M.D. Pa. Sept. 17, 2013) (quoting <u>Lignore v. Hosp. of Univ. of Pa.</u>, No. 04-CV-5735, 2007 U.S. Dist. LEXIS 32169, at *13 (E.D. Pa. April 30, 2007)). A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute" and are not a "mere waiver of statutory rights brought about by an employer's overreaching." <u>Lynn's Food</u>, 679 F.2d at 1355. The dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented. <u>Kraus v. PA Fit II, LLC</u>, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (Robreno, J.). "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute the FSLA is designed to address." <u>Altnor v. Preferred Freezer Servs.</u>, 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016) (citing <u>Barrentine v. Arkansas-Best Freight Sys., Inc.</u>, 450 U.S. 728, 739 (1981)).

Here, there is a bona fide dispute. Named Plaintiff contends that she and similarly situated workers were paid a

9

salary without overtime compensation for hours worked in excess
of forty per week. See Second Am. Compl. ¶ 15; ECF No. 43. Named
Plaintiff estimates she worked approximately forty-five to fifty
hours each week and frequently worked approximately fifty to
fifty-five hours per week between July 2018 and November 2018.
Id. at ¶¶ 33, 34. Defendant denies Named Plaintiff's factual
contentions. See Answer ¶¶ 33, 34; ECF No. 64. The proposed
settlement is not a "mere waiver of statutory rights brought by
an employer's overreaching." Cuttic, 868 F. Supp. 2d at 466. The
proposed settlement resolves a bona fide dispute because its
terms "reflect a reasonable compromise over issues such as back
wages, that are actually in dispute." Lynn's Food, 679 F. 2d at
1354.

### B. Furtherance of the FLSA's Implementation and Whether the Proposed Agreement is Fair and Reasonable

The next issue is whether the settlement is fair and
reasonable. Mabry, 2015 U.S. Dist. LEXIS 112137, at *4. "If the
parties are represented by competent counsel in an adversary
context, the settlement they reach will, almost by definition,
be reasonable." Starnes v. Amazon.Com, Inc., No. 23-cv-484, 2023
U.S. Dist. LEXIS 79515, at *13 (E.D. Pa. May 8, 2023) (quoting
Kapolka v. Anchor Drilling Fluids USA, LLC, No. 2:18-cv-01007,
2019 U.S. Dist. LEXIS 182359, at *6 (W.D. Pa. Oct. 22, 2019)).
Here, both parties are represented by counsel who are highly

experienced in wage-and-hour class and collective actions. See
Pls.' Mot. 3; ECF No. 96. The parties also engaged in mediation.
Id. at 9. Plaintiffs' counsel is an experienced attorney with
over 700 wage and hour cases, most of which are multi-plaintiff
actions. See Declaration ¶ 5, ECF No. 96-2. Co-counsel for
Plaintiffs works exclusively on wage and hour cases nationwide.
Id. at ¶ 7. The initial presumption of fairness applies here.

The fairness and reasonableness of the compensation terms
in a settlement agreement are assessed using the nine factors
from Girsh:[5]

> (1) the complexity, expense and likely duration of the
> litigation; (2) the reaction of the class to the
> settlement; (3) the stage of the proceedings and the
> amount of discovery completed; (4) the risks of
> establishing liability; (5) the risks of establishing
> damages; (6) the risks of maintaining the class action
> through the trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the
> best possible recovery; (9) the range of reasonableness
> of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).

The first Girsh factor "captures 'the probable costs, in
both time and money, of continued litigation.'" In re Cendant

---

[5] Courts in this Circuit routinely apply the nine-factor test
from Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), to
assess whether a proposed FLSA collective or state law class
action settlement agreement is fair and reasonable. See, e.g.,
Lyons, 2015 WL 4378514, at *4; Brumley v. Camin Cargo Control,
Inc., Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *4-5
(D.N.J. Mar. 26, 2012).

<u>Corp. Litig.</u>, 264 F.3d 201, 233 (3d Cir. 2001) ("<u>Cendant</u>")
(quoting <u>In re General Motors Corp. Pick-Up Truck Fuel Tank</u>
<u>Prods. Liability Litig.</u>, 55 F.3d 768, 812 (3d Cir. 1995)).
Forgoing expensive litigation will save costs for both parties.
<u>See</u> Pls.' Mot. 3-4; ECF No. 96. The complexity, expense, and
likely duration of the litigation weigh in favor of approving
the class settlement.

"The second <u>Girsh</u> factor 'attempts to gauge whether members
of the class support the settlement.'" <u>In re Warfarin Sodium</u>
<u>Antitrust Litig.</u>, 391 F.3d 516, 536 (3d. Cir. 2004) (quoting
<u>Krell v. Prudential Ins. Co. of Am.</u> (<u>In re Prudential Ins. Co.</u>
<u>Am. Sales Practice Litig. Agent Actions</u>), 148 F. 3d 283, 299 (3d
Cir. 1998) ("<u>Prudential</u>")). There have been no objections to
either the settlement terms or the attorneys' fee request. <u>See</u>
Pls.' Mot. 15; ECF No. 96. This factor favors approval.

"The third <u>Girsh</u> factor 'captures the degree of case
development that class counsel [had] accomplished prior to
settlement. Through this lens, courts can determine whether
counsel had an adequate appreciation of the merits of the case
before negotiating.'" <u>In re Warfarin</u>, 391 F.3d at 537 (quoting
<u>Cendant</u>, 264 F.3d at 235)). "[F]ormal discovery is not a
requirement for the third <u>Girsh</u> factor. What matters most is not
the amount or type of discovery class counsel pursued, but
whether they had developed enough information about the case to

12

appreciate sufficiently the value of the claims." In re NFL
Players Concussion Injury Litig., 821 F.3d 410, 439 (3d Cir.
2016). Here, the parties completed formal and informal discovery
which included the production of thousands of pages of
documents, and a day-long mediation. See Pls.' Mot. 9; ECF No.
96. The parties also engaged in analysis of wage-and-hour
records for each Plaintiff. Id. This factor weighs in favor of
approving the settlement.

"The fourth and fifth Girsh factors survey the possible
risks of litigation in order to balance the likelihood of
success and the potential damage award if the case were taken to
trial against the benefits of an immediate settlement." NFL
Concussion Litig., 821 F.3d at 439 (quoting Prudential, 148 F.3d
at 319). Plaintiffs acknowledge the "uncertain outcome and risk
of continuing with this litigation." See Pls.' Mot. 10; ECF No.
96. Because Defendant continues to vigorously deny and dispute
the claims alleged and the parties contest liability, there is
significant risk of establishing Defendant's liability. Id. Time
records for each Opt-in Plaintiff do not exist. Id.
Consequently, each Opt-in Plaintiff is being awarded a pro rata
share by attributing the same number of overtime hours per week
to each Plaintiff. Id. at 5. This does not represent a risk of
establishing damages because the agreement does not require that
the actual excess hours be determined for each Plaintiff. Id.

13

Overall, the balance of the fourth and fifth factors support approval of the settlement because the parties continue to contest liability.

The sixth Girsh factor, "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." In re Warfarin, 391 F.3d at 537 (citing Prudential, 148 F.3d at 321). In a settlement class context, "the court can always claim this factor weighs in favor of settlement" because "there will always be a 'risk' or possibility of decertification." Prudential, 148 F.3d at 321. Therefore, for this factor "deserve[s] only minimal consideration." NFL Concussion Litig., 821 F.3d at 440 (citation omitted). The parties recognize the risk of decertification. See Pls.' Mot. 12; ECF No. 96. The settlement was agreed to with an eye toward avoiding a decertification issue. Id. This factor minimally supports approval of the settlement agreement.

"The seventh Girsh factor considers 'whether the defendants could withstand a judgment for an amount greater than the settlement.'" In re Warfarin, 391 F.3d at 537-38 (quoting Cendant, 264 F.3d at 240). The ability of a defendant to withstand a greater settlement does not completely undermine the reasonableness of the settlement because "'in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against

14

the weight of the remaining factors, this fact alone does not undermine the reasonableness . . . of the settlement.'" NFL Concussion Litig., 821 F.3d at 440 (quoting Sullivan v. DB Invs., Inc., 667 F.3d 273, 323 (3d Cir. 2011)). The Court does not have information regarding Defendant's ability to withstand a greater judgment, therefore this factor is neutral.

The eighth and ninth Girsh factors evaluate "whether the settlement represents a good value for a weak case or a poor value for a strong case." In re Warfarin, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the risks the parties would face if the case went to trial." Id. at 538 (citing Prudential, 148 F.3d at 322). "[T]he present value of the damages plaintiffs would likely recover if successful appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." Prudential, 148 F.3d at 322 (quotation omitted). Plaintiffs do not have employee time records accounting for hours worked over forty per week, which represents a risk of establishing an accurate judgment amount. See Pls.' Mot. 5; ECF No. 96. There is no information to suggest Plaintiffs are receiving poor value for a strong case, and thus, these factors favor approval of the settlement agreement.

None of the <u>Girsh</u> factors weigh against approval and only one is neutral. Overall, the <u>Girsh</u> factors support the fairness and reasonableness of the agreement.

### C. Attorneys' Fees

Under the FSLA, the Court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "[J]udicial review is required 'to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" <u>Brumley v. Camin Cargo Control, Inc.</u>, Civil Action No. 08-1798 (JLL), 2012 U.S. Dist. LEXIS 40599, at *29 (D.N.J. Mar. 26, 2012) (quoting <u>Silva v. Miller</u>, 307 F. App'x 349, 351 (11th Cir. 2009)). Courts in this district use the percentage-of-recovery method to assess attorneys' fees in wage-and-hour and common fund cases. <u>Keller v. TD Bank, N.A.</u>, No. 12-5054, 2014 U.S. Dist. LEXIS 155889, at *38 (E.D. Pa. Nov. 4, 2014). The percentage-of-recovery method awards a fixed portion of the settlement fund to counsel. <u>McGee</u>, 2014 U.S. Dist. LEXIS 75840, at *11-12. <u>Gunter</u> provides seven factors to consider in a percentage-of-recovery analysis:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4)

16

the complexity and duration of the litigation; (5) the
risk of nonpayment; (6) the amount of time devoted to
the case by plaintiffs' counsel; and (7) the awards in
similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir.
2000).

"There is no rigid formula for weighing these factors since
each case is different, and in some circumstances one factor may
outweigh the rest." Starnes, 2023 U.S. Dist. LEXIS 79515, at *17
(quotation omitted). The Third Circuit has permitted fee awards
in common-fund cases in the range of twenty to forty-five
percent of the overall settlement fund. See id.; see also In re
TSO Fin. Litig., Civil Action Nos. 87-7903, 87-7961, 87-8142,
87-8302, 1989 U.S. Dist. LEXIS 8253, at *20 (E.D. Pa. July 17,
1989). The Third Circuit has cautioned that courts "may not rely
on a formulaic application of the appropriate range in awarding
fees but must consider the relevant circumstances of the
particular case." Cendant, 243 F.3d at 736.

Here, Defendant has agreed to pay a gross settlement amount
of $175,000.00 with forty percent (40%), or $70,000.00, of that
amount for attorneys' fees. See Pls.' Mot. 4; ECF No. 96.
Plaintiffs' counsel has capped costs and expenses at $11,979.94.
See id. Named Plaintiff is to receive a service award of

$5,000.00.[6] See id. The net settlement amount is $88,020.06 less settlement administration costs. See id. Plaintiffs' counsel estimates that each Opt-in Plaintiff's pro-rata share will be approximately $1,965.12. See Settlement Agreement ¶ 22, ECF No. 96-1.

The first Gunter factor considers the size of the fund and the number of the persons benefitted. See Starnes, 2023 U.S. Dist. LEXIS 79515, at *18. "[A]s a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." Id. (quotation omitted). "The inverse relationship is predicated on the belief that increases in recovery are usually a result of the size of the class and not a result of the efforts of counsel." Bredbenner v. Liberty Travel, Inc., No. 09-cv-905, 2011 U.S. Dist. LEXIS 38663, at *55 (D.N.J. Apr. 8, 2011) (citing Prudential, 148 F.3d at 339). A court in the Middle District of Pennsylvania determined that twenty-seven percent (27%) of a $700,000 settlement fund was fair and reasonable for attorneys' fees. See Rivera v. Martin's Famous Pastry Shoppe, Inc., No. 1:20-cv-00438-JPW, 2021 U.S. Dist. LEXIS 28829, at *3-5 (M.D. Pa. Feb. 16, 2021). Here, the settlement class is nearly the same size at fifty-five members but with a lower settlement amount, $175,000.00. See Pls.' Mot.

---

[6] Referred to in earlier settlement agreements as "general release award." Settlement Agreement ¶ 8, ECF No. 96-1.

3, 4, ECF No. 96. It follows that a greater percentage in attorneys' fees, forty percent, would be present with a lower gross settlement. <u>See id.</u> at 4. This factor weighs in favor of approval.

The second <u>Gunter</u> factor considers whether there were any objections to the fee award. <u>See Starnes</u>, 2023 U.S. Dist. LEXIS 79515, at *19. Here, there have been no objections to either the settlement terms or the attorneys' fee request. <u>See</u> Pls.' Mot. 15, ECF No. 96. This factor weighs in favor of approval.

The third <u>Gunter</u> factor considers the skill and efficacy of the attorneys involved. <u>See Starnes</u>, 2023 U.S. Dist. LEXIS 79515, at *19. Plaintiffs' counsel and co-counsel both have extensive experience in wage and hour collective action cases. <u>See</u> Settlement Agreement ¶¶ 5, 7, ECF No. 96-1. For this reason, this factor supports approval.

The fourth and sixth <u>Gunter</u> factors consider the complexity and duration of litigation and the amount of time devoted to the matter. <u>See Starnes</u>, 2023 U.S. Dist. LEXIS 79515, at *19. Prior to initiating the lawsuit Plaintiffs' counsel "spent considerable time investigating the veracity of the allegations, looking into [Defendant's] business and pay practices, its subsidiaries and staffing companies, prior Department of Labor investigations (if any), the applicable law relating to the misclassification of recruiters, the 'salary basis' test, and

19

venue and jurisdictional issues." See Settlement Agreement ¶ 11, ECF No. 96-1. Plaintiffs' counsel asserts they "devoted an incredible amount of time to the case," although the Court is not aware of the exact number of hours Plaintiffs' counsel spent working on the case. Id. at ¶ 26. The parties participated in a full-day mediation session with experienced wage-and-hour mediator Martin F. Scheinman, Esq., during which the parties agreed to the settlement terms. Id. at ¶ 18; Pls.' Mot. 3, ECF No. 96. Parties have engaged in both formal and informal discovery. See Pls.' Mot. 9, ECF No. 96. Parties agree that litigation in lieu of entering into this settlement agreement would be complex. Id. at 12. For the reasons discussed above, the fourth and sixth factors support approval.

The fifth Gunter factor considers the risk of nonpayment. See Starnes, 2023 U.S. Dist. LEXIS 79515, at *20. Plaintiffs' counsel agreed to work on a contingency basis and would not have recovered any fee without recovery from Defendant. See Settlement Agreement ¶ 21, ECF No. 96-1. This factor supports approval.

The seventh, and final, Gunter factor considers awards in similar cases. See Starnes, 2023 U.S. Dist. LEXIS 79515, at *21. The Third Circuit "has recognized fee awards in common-fund case generally range from twenty percent to forty-five percent of the overall settlement fund." Id. at *17-18 (citing Cendant, 243

F.3d at 736); see In re TSO Fin. Litig., 1989 U.S. Dist. LEXIS
8253, at *20. However, the Third Circuit has cautioned that
given the wide range of percentage fees, district courts "may
not rely on a formulaic application of the appropriate range in
awarding fees but must consider the relevant circumstances of
the particular case." Cendant, 243 F.3d at 736. Here, the
attorneys' fees' proportion is on the higher side but still
falls within the range accepted by the Third Circuit.
Furthermore, the gross settlement amount in this case is lower
than in other multi-plaintiff cases which may account for the
higher percentage appropriated for attorneys' fees.[7] See id.

    None of the Gunter factors weigh against approval of the
attorneys' requested fee of $70,000.00 given the complexity of
the litigation and work already performed. The requested
attorneys' fees will be approved.

### D. **Service Award**

    Service awards, also known as incentive awards, "are common
in class actions that result in a common fund for distribution
to the class" and are meant "to compensate named plaintiffs for
the services they provided and the risks they incurred during

---

[7] Approval of the attorneys' fees can be confirmed using the
Lodestar cross check method, but the Court does not have
information regarding how many hours Plaintiffs' counsel worked
on this matter. See Starnes, 2023 U.S. Dist. LEXIS 79515, at
*21-22. The Lodestar multiplier cannot be calculated without
this information. See id.

the course of class action litigation." In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig., 333 F.R.D. 364, 390 (E.D. Pa. 2019) (internal quotation marks omitted). Courts carefully review service awards when the award comes from the common fund. See Alvarez v. BI Inc., No. 16-2705, 2020 U.S. Dist. LEXIS 60656, at *17 (E.D. Pa. Apr. 6, 2020). The purpose of the review is to ensure fairness for other class members. See id. The Court cannot approve such awards "without a substantial basis to demonstrate that the individuals provided services for the Class and incurred risks during the course of the litigation." Id. at *17-18 (quoting Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 258 (D.N.J. 2005)). "The Court must carefully scrutinize proposed service awards so they do not turn into an improper method of lawyers compensating the lead plaintiffs for referring the case." Devine v. Ne. Treatment Ctrs., No. 20-02417, 2021 U.S. Dist. LEXIS 197924, at *23 (E.D. Pa. Oct. 14, 2021) (Robreno, J.). Here, Named Plaintiff's service award comes from the gross settlement amount. See Final Revised Settlement Agreement ¶ 2, ECF No. 106-1.

A service award which represents a reasonable percentage of the settlement fund is acceptable. See Devine, 2021 U.S. Dist. LEXIS 197924, at *24 (Robreno, J.). Courts in the Third Circuit have approved service awards that account for less than three percent of the gross settlement amount. See id. at *25

(collecting cases). Here, the service award is approximately 2.85% of the settlement fund and is therefore reasonable.

A $5,000.00 service award is fair and reasonable if there is a substantial basis to establish that the recipient provided services during litigation. Caddick v. Tasty Baking Co., No. 2:19-cv-02106-JDW, 2021 U.S. Dist. LEXIS 206991, at *28 (E.D. Pa. Oct. 27, 2021). In Caddick, a plaintiff serving as a class representative sat for extensive pre-suit interviews, provided crucial documents, submitted declarations, gave insight into the defendant's defenses, and made themselves available for the full-day mediation. Id. at *28-29. In approving the service award, the court determined that an award of $5,000.00 was within the range of similar awards approved in other class actions before the court. Id. at *29.

Here, Named Plaintiff was integral to reaching the settlement. Like in Caddick, Named Plaintiff here educated Plaintiffs' counsel regarding her and the Opt-in Plaintiffs' job experiences, compensation, hours worked, and insight into the Defendant's policies and procedures. Id. at *28; Pls.' Mot. 13, ECF No. 96. Named Plaintiff in the instant case also provided documents, actively participated in settlement discussions, and the settlement approval process. See Pls.' Mot. 13, ECF No. 96. Also as in Caddick, where the named plaintiffs took substantial risk in helping to lead the lawsuit, Named Plaintiff here took

23

substantial risk and faced potential retaliation or blacklisting
from other employers. 2021 U.S. Dist. LEXIS 206991, at *28;
Pls.' Mot. 13, ECF No. 96. Therefore, awarding Named Plaintiff a
service award is reasonable.

### E. <u>Frustration of the Fair Labor Standards Act</u>

Finally, the Court must determine if the proposed
settlement agreement furthers or impermissibly frustrates the
implementation of the Fair Labor Standards Act in the workplace.
See <u>Starnes</u>, 2023 U.S. Dist. LEXIS 79515, at *32.

#### 1. <u>Confidentiality Clause</u>

"[C]onfidentiality clauses in FLSA settlement agreements
frustrate the purpose of the FLSA by facilitating information
asymmetry that hinders FLSA enforcement." <u>Solkoff v. Pa. State
Univ.</u>, 435 F. Supp. 3d 646, 658 (E.D. Pa. 2020) (Robreno, J.). A
"confidentiality clause may be approved if it is limited to
prevent its undermining the purpose of the FLSA." <u>Id.</u> at 659. A
confidentiality clause limited to prohibiting discussion with
the media does not ordinarily frustrate the FLSA. <u>See</u> <u>id.</u>
Confidentiality clauses that specifically mention the media have
been construed to be limited to the media and to allow
discussion with friends, family, and other employees. <u>See
Devine</u>, 2021 U.S. Dist. LEXIS 197924, at *20-22. <u>See also</u> <u>McGee</u>
2014 U.S. Dist. LEXIS 75840, at *9-10; <u>In re Chickie's & Pete's</u>

Wage & Hour Litig., No. 12-6820, 2014 U.S. Dist. LEXIS 30366, at *10-11 (E.D. Pa. Mar. 7, 2014).

The confidentiality clause contained in the original Settlement Agreement did not narrow the restriction to discussion or publicization to the media. Unlike in McGee where the confidentiality clause states "[n]either Party nor their attorneys or anyone else acting on their behalf shall seek any publicity or make any statement to the media relative to this Settlement," the original confidentiality clause in the instant case required Named Plaintiff to "agree to keep all the non-public terms of this settlement confidential and not publicize this settlement in any manner." McGee, 2014 U.S. Dist. LEXIS 75840, at *8-9; Settlement Agreement ¶ 8, ECF No. 96-1. The McGee court determined that the confidentiality clause did not frustrate the FLSA but that was not the case here because the original clause extended the restriction beyond the media. See McGee, 2014 U.S. Dist. LEXIS 75840, at *9-10.

In Starnes, Judge Kearney determined that a confidentiality agreement which read that plaintiffs shall "not issue a press release, hold a press conference, public information about the settlement on any website . . . or otherwise publicize the settlement" did not frustrate the purpose of the FLSA. Starnes, 2023 U.S. Dist. LEXIS 79515, at *33. The language in the original Settlement Agreement shared the "publicize" language

25

but lacked the preceding mention of media related activities.
See Settlement Agreement ¶ 8, ECF No. 96-1. In Starnes,
"publicize" as a catch-all-term is narrowed by the preceding
qualifying terms. Starnes, 2023 U.S. Dist. LEXIS 79515, at *33.
"Publicize" warranted a broader construction here because there
are no preceding terms to define publicization, which opened
Named Plaintiff to liability for breaching the agreement. See
Settlement Agreement ¶ 8, ECF No. 96-1.

The confidentiality clause contained in the revised
Settlement Agreement narrowed the restriction to discussion with
the media. See Revised Settlement Agreement ¶ 13, ECF No. 104-1.
In the original Settlement Agreement, payment of the service
award was conditional on Named Plaintiff not publicizing the
settlement in any way. See Settlement Agreement ¶ 8, ECF No. 96-
1. In the revised agreement, the provision references paragraph
thirteen--titled "Limited Confidentiality"--which only limits
publicization of the settlement agreement with online or
traditional media. See Revised Settlement Agreement ¶¶ 8, 13,
ECF No. 104-1. In part, it required all Plaintiffs "agree they
will not, including under a pseudonym, make or publish any
statements to the media or press (including, not limited to, any
online media or press), or issue any press release, addressing
the settlement or the negotiation of the settlement and will not
contact any media representatives." Id. at ¶ 13. This language

26

is in line with the language from Starnes, where the
confidentiality provision did not frustrate the FLSA. See
Starnes, 2023 U.S. Dist. LEXIS 79515, at *33. Therefore, the
Court was satisfied with the modifications as to confidentiality
in the revised settlement agreement.

The parties struck the following language from Paragraph 8
in the final revised Settlement Agreement:

> In exchange for this Service Award, Named Plaintiff
> will: (i) agree not to appeal the Court's Order approving
> the settlement; (ii) agree to keep all the non-public
> terms of this settlement confidential and not publicize
> this settlement in any manner inconsistent with
> Paragraph 13; and (iii) agree not to apply for employment
> with Defendant in the future, however, nothing shall
> prohibit Named Plaintiff from future employment with
> Defendant should it merge with, acquire, or be acquired
> by an entity that employs Named Plaintiff.

Final Revised Settlement Agreement ¶ 8, ECF No. 106-1. This
removes the reference to Paragraph 13, the confidentially
agreement. However, paragraph 13 is still applicable to Named
Plaintiff. See id. ¶ 13. The final revised Settlement Agreement
provides the same confidentiality provision for Named Plaintiff
and Opt-in Plaintiffs. Therefore, the confidentiality provision
included in the final revised Settlement Agreement does not
frustrate the FLSA.

## 2. Release of Claims

Courts in the Third Circuit require litigants to limit the
scope of waiver and release provisions to the specific

litigation when reviewing proposed Fair Labor Standard Act settlement release provisions. See Alvarez, 2020 U.S. Dist. LEXIS 60656, at *24. "This is because 'overly broad releases have no place in settlements of most FLSA claims.'" Id. (quoting Bright v. Mental Health Resource Center, Inc., No. 10-427, 2012 U.S. Dist. LEXIS 33929, at *4 (M.D. Fla. Mar. 12, 2012)). "Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time." Id. "Courts must closely examine FLSA settlements containing 'pervasive' release provisions that 'confer[] an uncompensated, unevaluated, and unfair benefit on the employer.'" Id. (quoting Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461 & 09-6128, 2020 U.S. Dist. LEXIS 40599, at *1 (D.N.J. Mar. 26, 2012)) (alteration in original).

There were multiple releases in the original Settlement Agreement. The first release required Opt-In Plaintiffs to release the following against Defendant:

> Upon passage of the Approval Date, each Plaintiff (on behalf of himself/herself and his/her heirs, spouses, executors, assigns, and representatives) releases and forever discharges any and all wage and hour claims they may have against the Released Parties relating back to the full extent of the federal and state statute of limitations and continuing to the Approval Date, including, without limitation, all claims under the FLSA and PMWA as asserted in this Action, all state and

28

federal claims for unpaid wages (including overtime),
timely payment of wages, wage statement or wage notice
claims, and related claims for penalties, interest
liquidated damages, attorney's fees, costs, and
expenses. This release is contingent upon Defendant's
fulfillment of its payment obligations under sections 6,
7, 8, and 9, below.

Pls.' Mot. 6, ECF No. 96. Named Plaintiff's release was broader
in scope. Under the original settlement agreement, Named
Plaintiff would "be subject to a general release of all claims
she has related to her employment with [Defendant] in exchange
for the consideration she will receive pursuant to the Parties'
Agreement, including for her General Release Award." Id.

District courts the Third Circuit have previously excluded
broad general release provisions that go beyond the claims
related to the specific litigation. See Kraus, 155 F. Supp. 3d
at 533; see also Howard, 197 F. Supp. 3d at 779. Releases in
FLSA settlements are acceptable when the scope of the waiver
does not extend beyond claims related to the specific
litigation. See Sawyer v. Health Care Sols. at Home, Inc., No.
5:16-cv-5674, 2019 U.S. Dist. LEXIS 61499, at *5 n.4 (E.D. Pa.
Apr. 9, 2019); see also Devine, 2021 U.S. Dist. LEXIS 197924, at
*22-23. A release is acceptable where it does not release all
claims "'related or unrelated, known or unknown' that would
allow 'the employer to extract from the plaintiff[s] a benefit
beyond what [they are] compensated for in exchange for payment
of the fair wages' owed." Devine, 2021 U.S. Dist. LEXIS 197924,

at *22-23 (quoting Solkoff, 435 F. Supp. 3d at 660). Here, original Settlement Agreement "releases and forever discharges any and all wage and hour claims." Pls.' Mot. 6, ECF No. 96. The release did not extend to any and all claims that Plaintiffs could bring. The release for Opt-In Plaintiffs was therefore acceptable under the FLSA.

However, Named Plaintiff's release was broader in scope. Under the original Settlement Agreement, Named Plaintiff would "be subject to a general release of all claims she has related to her employment with [Defendant] in exchange for the consideration she will receive pursuant to the Parties' Agreement, including for her General Release Award." Pls.' Mot. 6, ECF No. 96.

A service or incentive award does not make a broad general release clauses permissible under the FLSA. See Alvarez, 2020 U.S. Dist. LEXIS 60656, at *29. In Alvarez, plaintiffs bringing an FLSA collective action on behalf of similarly situated individuals, like the Named Plaintiff here, received service awards in addition to the payment made to Opt-in plaintiffs. See id. at *31. The court determined that the release was pervasive and overbroad. See id. Furthermore, the court determined that the service award was for the named plaintiffs' service in prosecuting the action, not in exchange for a broader release. See id. at *32; see also Starnes, 2023 U.S. Dist. LEXIS 79515,

30

at *36 (holding "a service award [is] appropriate only for the
<u>services</u> rendered in prosecuting th[e] action and for the risks
incurred, but not for the broad release of claims"). The court
finally commented that it had no "knowledge as to the value of
the non-FLSA claims Named Plaintiffs have waived in
consideration for their service awards." <u>Id.</u> at *32-33. As in
<u>Alvarez</u>, this release frustrated the FLSA because the release
waived claims beyond the instant wage-and-hour dispute. <u>See</u>
<u>Alvarez</u>, 2020 U.S. Dist. LEXIS 60656, at *33.

The revised settlement agreement failed to provide one
release for all Plaintiffs, including Named Plaintiff. <u>See</u>
Revised Settlement Agreement ¶¶ 5, 8, ECF No. 104-1. Named
Plaintiff's Service Award required her to waive her right to
appeal the Court's Order approving the settlement and agree not
to apply for employment with Defendant in the future. <u>Id.</u> at ¶
8. A service award may not be contingent on waiving other
rights. <u>See</u> <u>Alvarez</u>, 2020 U.S. Dist. LEXIS 60656, at *32
(holding service awards are for named plaintiffs' service in
prosecuting the action, not in exchange for a broader release).

As explained above, the parties removed any and all
language regarding additional waivers on behalf of Named
Plaintiff in exchange for the Service Award. <u>See</u> Final Revised
Settlement Agreement ¶ 8, ECF No. 106-1. Therefore, the
construction of Named Plaintiff's service award is acceptable

under the FLSA. <u>See</u> <u>Starnes</u>, 2023 U.S. Dist. LEXIS 79515, at *36 (holding service awards are not meant to provide Defendant a broader release of claims).

**VI.   CONCLUSION**

The Court finds that there is a bona fide dispute and that the financial terms of the settlement are fair and reasonable. Therefore, the Court will approve the final revised settlement agreement.

An appropriate order follows.